Filed 9/5/14  P. v. Chacon CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HECTOR RAMIREZ CHACON,<br><br>    Defendant and Appellant. | B253484<br><br>(Los Angeles County<br>Super. Ct. No. BA398108) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Gail Ruderman Feuer, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Zee Rodriguez and Mary Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found defendant Hector Chacon guilty of one count of assault with a deadly weapon (Pen. Code, § 245 subd. (a)(1))[1] (count 1), one count of assault with intent to cause great bodily injury (§ 245 subd. (a)(1)) (count 2),[2] and one count of second degree robbery (§ 211) (count 4). The jury also found that the offenses were committed for the benefit of and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members within the meaning of section 186.22, subdivisions (b)(1)(B) and (b)(1)(C). Defendant was found to have a prior conviction within the meaning of section 667, subdivision (a). Defendant was sentenced to a total of 25 years.

Defendant appeals on the grounds that: (1) he should have only been convicted of one count under section 245, subdivision (a)(1) because he committed one continuous assault rather than two separate assaults; (2) convicting him of two counts under section 245, subdivision (a)(1) violated due process under section 654; and (3) the court violated due process by giving the mutual combat jury instruction.

## **FACTS**

Maria Aguilar got off a bus in the late afternoon at the corner of Sixth Street and Lafayette Park. Maria began walking towards Rampart Boulevard to meet her boyfriend, Julio Plascencia. Defendant was also at the bus stop. Defendant approached Maria and asked her why she was by herself. Maria ignored defendant and met up with Plascencia, who was heading to meet Maria at the bus stop. Defendant walked up to Plascencia and asked him, "Where you from?" Plascencia answered that he was from nowhere. Defendant declared that he was a member of Mara Salvatrucha, or MS-13, and accused Plascencia of being from the 18th Street gang. Plascencia and Maria walked away from

---

[1]     All statutory references are to the Penal Code unless otherwise indicated.

[2]     At the time the crimes were committed, both offenses, i.e., assault with a deadly weapon and assault with the intent to cause great bodily injury, were stated in the same subdivision ((a)(1)) of section 245. The section has subsequently been amended and those two crimes appear in separate subdivisions.

defendant to a nearby Carl's Jr. They ordered food and sat in the back of the restaurant to eat.

About 15 minutes later, defendant entered Carl's Jr. with codefendants Gabriella Lopez and Alexander Revolorio. As a group, the three approached Plascencia and Maria. Revolorio and defendant asked where Plascencia was from, and Lopez asked Maria where she was from. The three codefendants made challenges and, for about four minutes before leaving Carl's Jr., accused Plascencia and Maria of being members of 18th Street. At various times, the codefendants claimed that they were members of MS-13.

When they finished eating, Plascencia and Maria left the restaurant and decided to walk down Virgil Avenue, hoping to avoid the three codefendants. Unfortunately, defendant and his associates were waiting to intercept them on Virgil Avenue. Lopez walked up to Maria, said "Mara Salvatrucha," and punched her in the face several times. Meanwhile, Revolorio and defendant began hitting and kicking Plascencia. They lifted up his shirt to see if he had any gang tattoos but found none. Defendant stopped hitting and kicking Plascencia and went over to Maria. Defendant hit Maria and demanded that she give him a ring that she was wearing, which she refused to do. He hit her again, and she fell to the ground. Lopez also began hitting Maria. Maria then took off her ring, and defendant grabbed it out of her hand. Lopez also demanded Maria's purse and continued to hit Maria until she let it go. Maria dropped a plastic shopping bag with coins in it, which Lopez picked up.

Plascencia tried to come to Maria's defense as defendant and Lopez were hitting Maria and taking her property, when Revolorio pulled out a knife and began chasing Plascencia. Plascencia ran away from Revolorio and managed to flag down a sheriff's car that was stopped at a red light on Sixth Street. Plascencia told the deputies "they had a knife."

At this point, Revolorio returned to defendant and Lopez and told them the police had arrived. Defendant and Lopez let Maria go, and she ran to Plascencia, who was

3

talking with the deputies. She told the deputies that she had been robbed. The three codefendants dropped the knife and Maria's property as they began to walk away.

Plascencia described the weapon to police officers as a kitchen knife with a black handle. Maria pointed out defendant, Lopez, and Revolorio to the police, who then arrested them. The police found Revolorio's knife, as well as Maria's purse and bag.

## DISCUSSION

### I. Defendant Was Properly Convicted of Two Counts Under Section 245, Subdivision (a)(1)

#### A. *Defendant's Argument*

Defendant contends that the two counts of assault should have been combined into one count, or, in the alternative, that one count be stayed. Defendant maintains that the two counts arise from one continuous transaction.

#### B. *Relevant Authority*

Section 954 provides, in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of offenses charged . . . ." Case law clearly establishes that a single statute may support multiple convictions, even when the events all occur within a few minutes. (See, e.g., *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1474; *People v. Correa* (2012) 54 Cal.4th 331, 337.)

At the time of defendant's crimes, section 245, subdivision (a)(1) provided: "Any person who commits an assault upon the person of another *with a deadly weapon* or instrument other than a firearm or *by any means of force likely to produce great bodily injury* shall be punished by imprisonment in the state prison . . . . " (Italics added.)

The facts of the case dictate whether it is appropriate to convict for multiple counts of the same crime. (See *People v. Johnson*, *supra*, 150 Cal.App.4th at p. 1474.)

4

**C.** *Analysis*

The question here is whether due process was violated when defendant was charged with and convicted of two counts under the same Penal Code section for events which occurred within a small time frame. Here, the first and second counts of violating section 245, subdivision (a)(1) arose under distinct circumstances.

Defendant and Revolorio assaulted Plascencia by hitting and kicking him before defendant left Plascencia to join Lopez in attacking Maria. This act constitutes one completed assault by defendant against Plascencia: an assault with intent to inflict great bodily injury.

Revolorio then pulled out a knife and began chasing Plascencia. Under a theory of aiding and abetting, defendant was also culpable for this assault, even though he did not personally wield the knife. (See *People v. Beeman* (1984) 35 Cal.3d 547, 554.) This act constitutes the second completed assault by defendant against Plascencia: the assault with a deadly weapon.

The two completed assaults against Plascencia justified two convictions under the same statute. (See *People v. Johnson*, *supra*, 150 Cal.App.4th at p. 1474.) The two assaults, though separated by minutes, are independently sufficient to support a conviction under section 245, subdivision (a)(1) for each count.

**II.** **Defendant's Sentence Is Not a Violation of Due Process Under Section 654**

Defendant contends that his sentence violates section 654, which provides that a defendant cannot be punished for the same act under separate provisions. Defendant's argument fails under both the language of the statute and the facts of the case. Section 654, subdivision (a) specifies that "[an] act or omission that is punishable in *different* ways by *different* provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Italics added.) In the instant case, defendant was convicted of two counts of the *same* provision, and the facts demonstrate that each count was a separate act, which provides an independent basis sufficient to sustain a

5

punishment for both violations of section 245, subdivision (a)(1).  (See *People v. Johnson*, *supra*, 150 Cal.App.4th at p. 1474.)

### III.   The Trial Court Did Not Err in Giving the Mutual Combat Instruction to the Jury

Defendant contends that the trial court erred in giving CALCRIM No.3471, the jury instruction regarding mutual combat.[3]  Defendant asserts that the "judgment of guilt should be reversed because the trial court erroneously gave a mutual combat instruction." He reasons that the instruction "was erroneous because there was no evidence appellant engaged in mutual combat" and that "[t]he instruction was prejudicial because it deprived appellant of his right to engage in self-defense of a third party."  We disagree.

The mutual combat instruction was properly given because, according to defendant's testimony, Revolorio and Plascencia "push[ed] each other" and "were fighting."  From this testimony the jury reasonably could have concluded that a mutual combat took place.  Though by his account, defendant was not himself engaged in mutual combat, CALCRIM No. 3471 was still instructive as to whether he was justified in defending Revolorio.  That the jury chose not to believe defendant's testimony does not support a finding of prejudice.  The instruction was appropriately given.

In any event, the contention is forfeited because defendant failed to object to the instruction during the trial.  (See, e.g., *People v. Valdez* (2004) 32 Cal.4th 73, 137; *People v. Jackson* (1996) 13 Cal.4th 1164, 1223; *People v. Lopez* (2011) 198 Cal.App.4th 1106, 1118-1119.)

---

**3**      CALCRIM No. 3471 states:  "A person who engages in mutual combat or who is the initial aggressor has a right to self-defense only if:  [¶]  1.  He actually and in good faith tries to stop fighting;  [¶]  2.  He indicates, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wants to stop fighting and that he has stopped fighting;  [¶]  AND  [¶] 3.  He gives his opponent a chance to stop fighting.  [¶]  If a person meets these requirements, he then has a right to self-defense if the opponent continues to fight.  [¶]  A fight is *mutual combat* when it began or continued by mutual consent or agreement.  That agreement may be expressly stated or implied and must occur before the claim to self-defense arose."

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.